**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

    *-and-*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York            1:19-cv-10686

| | |
|---|---|
| Ryan Cosgrove, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Class Action Complaint |
| - against - | |
| Oregon Chai, Inc., | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1. Oregon Chai, Inc. ("defendant") manufactures, distributes, markets, labels and sells powdered chai tea mix packets purporting to be flavored by vanilla, under their Oregon Chai brand ("Products").

2. The Products are available to consumers from retail and online stores of third-parties and defendant's website and contain eight packets each weighing one ounce (28g).

3. The front label includes the main flavor designation, "Vanilla," "Vanilla and honey

1

combine with premium black tea and chai spices" and "Made with Natural Ingredients."



4. Chai refers to a "type of drink, made originally in India, consisting of tea made with spices and usually with milk and sugar added."[1]

5. Chai is often flavored vanilla because the flavor from this tropical orchid helps to smooth out the spiciness and enhance the sweetness.

6. The Products are misleading because although labeled as "Vanilla," they have less real vanilla flavor than the label suggests.

---

[1] Cambridge Dictionary, Chai, Definition.

2

I.     Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

7.     The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized flavor commonly known as vanilla, defined by law as "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[2]

8.     Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[3]

9.     Though the Pure Food and Drugs Act of 1906 ("Pure Food Act") was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[4]

10.    It was evident that protecting consumers from fraudulent vanilla would be challenging, as E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[5]

11.    This demand could not be met by the natural sources of vanilla, leading manufacturers and merchants to devise clever, deceptive and dangerous methods to imitate vanilla's flavor and appearance.

12.    Today, headlines tell a story of a resurgent global threat of "food fraud" – from olive

---

[2] 21 C.F.R. §169.3(c).
[3] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018.
[4] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.
[5] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

oil made from cottonseeds to the horsemeat scandal in the European Union.[6]

13. Though "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

A. Food Fraud as Applied to Vanilla

14. Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[7]

15. The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[8]

| Type of Food Fraud | Application to Vanilla |
|---|---|
| ➢ Addition of markers specifically tested for instead of natural component of vanilla beans | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Appearance of *more* and/or higher quality of the valued ingredient | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks the product contains real vanilla beans, when the ground beans have been exhausted of flavor |
| | • Caramel to darken the color of an imitation vanilla so it |

---

[6] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.
[7] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.
[8] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

4

| | |
|---|---|
| | more closely resembles the hue of real vanilla[9] |
| | • Annatto and turmeric extracts in dairy products purporting to be flavored with vanilla, which causes the color to better resemble the hue of rich, yellow butter |
| ➢ Substitution and replacement of a high quality ingredient with alternate ingredient of lower quality | • Tonka beans, though similar in appearance to vanilla beans, are banned from entry to the United States due to fraudulent use |
| | • Coumarin, a toxic phytochemical found in Tonka beans, added to imitation vanillas to increase vanilla flavor perception |
| ➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, derived from recycled paper, tree bark or coal tar, to imitate taste of real vanilla |
| | • "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste"[10] |
| ➢ Compounding, Diluting, Extending | • Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[11] |
| | • "Spiking" or "fortification" of vanilla through addition of natural and artificial flavors including vanillin, which simulates vanilla taste but obtained from tree bark |
| ➢ Addition of fillers to give | • Alleged injection of vanilla beans with mercury, a |

---

[9] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.
[10] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[11] Berenstein, 423.

5

| | |
|---|---|
| the impression there is more of the product than there actually is | poisonous substance, to raise the weight of vanilla beans; *see International Flavors and Fragrances (IFF), Inc. v. Day Pitney LLP and Robert G. Rose,* 2005. Docket Number L-4486-09, Superior Court of New Jersey, Middlesex County. |
| ➢ Ingredient List Deception[12] | • Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list<br>   ○ "ground vanilla beans" gives impression it describes unexhausted vanilla beans when actually it is devoid of flavor and used for aesthetics<br>   ○ "natural vanilla flavorings" – "-ing" as suffix referring to something *like* that which is described<br>   ○ "Vanilla With Other Natural Flavors" – implying such a product has a sufficient amount of vanilla to characterize the food; often containing high amount of vanillin, which must be disclosed as an *artificial* flavor when paired with vanilla |

II.   Use of Vanilla "WONF" (in sheep's clothing) to Imitate Real Vanilla

16.   The global shortage of vanilla beans has forced the flavor industry to "innovate[ing] natural vanilla solutions…to protect our existing customers."[13]

17.   These "customers" do not include the impoverished vanilla farmers who are at the mercy of global conglomerates nor consumers, who are sold products labeled as "vanilla" for the same or higher prices than when those products contained *only* vanilla.

18.   According to Suzanne Johnson, vice president or research at a North Carolina

---

[12] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar.
[13] Amanda Del Buono, Ingredient Spotlight, Beverage Industry, Oct. 3, 2016.

6

laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price."

19. According to industry leaders like the head of "taste solutions" at Irish conglomerate Kerry, flavor manufacturers must "[G]et creative" and "build a compounded vanilla flavor with other natural flavors."

20. These compounded flavors typically exist in a "black box" and "consist of as many as 100 or more flavor ingredients," blended together in a special ratio to complement and enhance the vanilla component.[14]

21. A compounded vanilla flavor "that matches the taste of pure vanilla natural extracts" can supposedly "provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."[15]

22. The only way to duplicate vanilla's taste is to use components designed to imitate it, like vanillin, or enhance or extend its flavor – all of which are inconsistent with the vanilla flavoring expected by consumers.

III. Labeling of Products as "Vanilla" is Misleading

23. The front labels tell consumers the Product's (1) characterizing flavor is vanilla and (2) contain a sufficient amount of the characterizing food ingredient, vanilla flavoring or vanilla extract, to independently characterize the Product.

24. The unqualified, prominent and conspicuous front label representation of "Vanilla" is false, deceptive and misleading because the Products contain flavoring other than vanilla, as

---

[14] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "That *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).
[15] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.

7

revealed by "Natural Flavors" on the ingredient list.

**INGREDIENTS:** SUGAR, DRIED WHOLE MILK, DRIED NONFAT MILK, DRIED HONEY, TAPIOCA MALTODEXTRIN, INSTANT BLACK TEA, MALTODEXTRIN, SALT, ==NATURAL FLAVORS==.

25. "Natural flavor" is defined generally as "the essential oil, oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material and can refer to combinations of natural flavors. *See* 21 C.F.R. § 101.22(a)(3),

26. "Artificial flavor" in contrast is any substance whose function is to impart flavor that is not derived from a natural source. *See* 21 C.F.R. § 101.22(a)(1).

27. Where a product is represented as "Vanilla" on the front label but the ingredient list declares "Natural Flavors," it means that *if* any vanilla was used in the product, it is as a component of the "natural flavor" ingredient.

28. In the context of a vanilla front label claim and natural flavors representation on the ingredient list, the ingredient used would be "vanilla with other natural flavors."

29. Because the Product's front label does not disclose these "other natural flavors," consumers will expect they get a product flavored exclusively with vanilla – beyond those components which form the "base" of a chai beverage, i.e., spices and tea components.

30. When companies use vanilla and non-vanilla flavors in a product, they are often purchased in one package or container.

31. The reasons for this include (1) having to manage fewer suppliers, (2) formulation and blending of the flavor components to enhance and modify other components or product

ingredients, (4) consistency within the product batches the flavor is added to, (5) volatile nature of flavoring constituents, (6) the ability to make misleading representations with respect to a product's flavor and ingredients and (7) ease of use.

32. Where a multicomponent ingredient is included in a food, it can be declared by (1) indicating the common or usual name of the ingredient with the components declared in parentheses in order of predominance by weight and (2) by splitting the components of the ingredient and incorporating them into the ingredient list in order of predominance by weight.[16]

33. When a food manufacturer receives a flavor component from a flavor supplier that consists of two or more natural flavor ingredients, it can be labeled by declaring each ingredient by its common or usual name such as "strawberry flavor, banana flavor."[17]

34. Flavorings are not subject to the provisions which allow for the components of an ingredient to be incorporated into the statement of ingredients in order of predominance by weight such that when "strawberry flavor, banana flavor" is added to a fabricated food, it will be designated as "natural flavor."[18]

35. One of the reasons for this exception is because components of a flavor may be highly concentrated – i.e., if a component of the flavoring is highly concentrated and another is a natural compound, if these were split apart, the presence of the natural compound would be higher in order on the ingredient list, giving the impression the product contains more of it than it actually does, even though the former is more powerful in imparting flavor to the product.

IV. Conclusion

---

[16] 21 C.F.R. § 101.4(b)(2).
[17] 21 C.F.R. § 101.22(g)(2).
[18] *See* 21 C.F.R. § 101.4(b)(1) ("Spices, flavorings, colorings and chemical preservatives shall be declared according to the provisions of 101.22.") *with* 21 C.F.R. § 101.22(h)(1) ("The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way: (1) Spice, natural flavor, and artificial flavor may be declared as "spice", "natural flavor", or "artificial flavor", or any combination thereof, as the case may be.")

36. The proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

37. The Products are misleading because they do not contain the amount, type and percentage of vanilla as a component of the flavoring in the Products, which is required by the labeling and consistent with consumer expectations.

38. Had plaintiff and class members known the truth about the Products, they would not have bought the Product or would have paid less for it.

39. The Products contain other representations which are misleading and deceptive.

40. As a result of the false and misleading labeling, the Products are sold at premium prices, approximately no less than $4.99 per 8 oz (224 g), calculated on an average per ounce basis across the Products, excluding tax – compared to other similar products represented in a non-misleading way.

## Jurisdiction and Venue

41. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

42. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

43. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

44. This is a reasonable assumption because defendant's Products are sold in tens of thousands of stores across all 50 states and have been sold bearing the allegedly misleading claims

for at least several years.

45. Plaintiff Ryan Cosgrove is a citizen of Connecticut and seeks to represent a Connecticut class of consumers.

46. Defendant Oregon Chai, Inc. is a Oregon corporation with a principal place of business in Seattle, King County, Washington.

47. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

48. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

49. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

50. Plaintiff Ryan Cosgrove is a citizen of Bronx County, New York.

51. Defendant is a Oregon corporation with a principal place of business in Seattle, King County, Washington.

52. During the class period, plaintiff purchased one or more of the Products identified herein for personal use, consumption or application based on the above representations, in states including New York and California, for no less than the price indicated, *supra*, excluding tax, in her state or an immediately adjacent state.

53. Plaintiff would consider purchasing the Product again if there were assurances that the Products' representations were no longer misleading.

## Class Allegations

54. The classes will consist of all consumers in all 50 states with sub-classes for the

11

individual states and nationwide classes.

55. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff and class members are entitled to damages.

56. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same representations.

57. Plaintiffs is adequate representative because his or her interests do not conflict with other members.

58. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

59. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

60. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

61. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350, California Consumer Protection Laws ("CLRA") *et seq*. and Consumer Protection Statutes of Other States and Territories</u>

62. Plaintiff asserts causes of action under the consumer protection statutes of New York, General Business Law ("GBL") §§ 349 & 350 and California Consumer Legal Remedies Act ("CLRA"), Unfair Competition Act, *et seq*.

63. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

64. Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

65. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

66. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products contain sufficient amounts of the highlighted ingredient, vanilla, to characterize the taste or flavor of the Products.

## Negligent Misrepresentation

67. Plaintiff incorporates by reference all preceding paragraphs.

68. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through misrepresenting the characterizing properties of the flavoring ingredient, given that the amount of vanilla is non-detectable by advanced scientific means.

69. Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

70. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

71. The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

72. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

73. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

74. Plaintiff incorporates by reference all preceding paragraphs.

75. Defendant manufactures and sells products which contain the identified characterizing ingredients and/or flavors, in amounts sufficient to independently characterize the Products, which are desired by consumers.

76. The Products warranted to Plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not due to the flavoring not consisting entirely of vanilla from vanilla beans.

77. Defendant had a duty to disclose and/or provide a non-deceptive description and identification of the Products.

78. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

79. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

80. The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

81. Plaintiff and class members relied on defendant's claims, paying more than they would have.

Fraud

82. Plaintiff incorporates by references all preceding paragraphs.

83. Defendant's purpose was to sell products which purported to contain valuable and desired characterizing ingredients and/or flavors, and represent the Products were predominantly

flavored by the designated ingredients and contained sufficient independent amounts of same.

84. Defendant's fraudulent intent is evinced by its failure to accurately indicate the Products contained non-vanilla flavoring as part of the vanilla component in the Products.

85. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

### Unjust Enrichment

86. Plaintiff incorporates by reference all preceding paragraphs.

87. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;
4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: November 18, 2019

                Respectfully submitted,

                Sheehan & Associates, P.C.
                /s/Spencer Sheehan
                Spencer Sheehan
                505 Northern Blvd., Suite 311
                Great Neck, NY 11021
                Telephone: (516) 303-0552
                Facsimile: (516) 234-7800
                *spencer@spencersheehan.com*
                E.D.N.Y. # SS-8533
                S.D.N.Y. # SS-2056

                    *-and-*

                Reese LLP
                Michael R. Reese
                100 West 93rd Street, 16th Floor
                New York, NY 10025
                Telephone: (212) 643-0500
                Facsimile: (212) 253-4272
                *mreese@reesellp.com*

1:19-cv-10686
United States District Court
Southern District of New York

Ryan Cosgrove, individually and on behalf of all others similarly situated,

Plaintiff

- against -

Oregon Chai, Inc.,
Defendant

Class Action Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: November 18, 2019

/s/ Spencer Sheehan<br>Spencer Sheehan