Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

*(Additional Counsel on Signature Page)*

United States District Court
Southern District of New York                    1:19-cv-10686-KPF

| | |
|---|---|
| Ryan Cosgrove, Amanda Crout, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| - against - | Second Amended Class Action Complaint |
| Oregon Chai, Inc., | |
| Defendant | |

       Plaintiffs by attorneys allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

       1.     Oregon Chai, Inc. ("defendant") manufactures, distributes, markets, labels and sells powdered chai tea mix with a purported primary characterizing flavor of vanilla, under the Oregon Chai brand ("Products").

       2.     The Products is available to consumers from retail and online stores of third-parties and defendant's website and is sold in tins of 10 OZ and boxes containing eight 1 OZ packets.

       3.     The front label of the tins and packets are identical except for the net weight and serving size.

       4.     The relevant representations include "Oregon Chai," "Vanilla," "Vanilla and honey combine with premium black tea and chai spices" and "Made with Natural Ingredients."

Tins                                          Packets

 

5.    That the Tin and Packets are identical in composition is further shown through comparison of their Nutrition Facts and identical Ingredient Lists.

| Tin | Packets |
|-----|---------|



6.      The differences in the exact numbers on the Nutrition Facts is because the serving size from the tin is 34 grams compared 28 grams for the packets.

7.      Chai refers to a "type of drink, made originally in India, consisting of tea made with spices and usually with milk and sugar added."[1]

8.      Chai is often flavored vanilla because the flavor from this tropical orchid helps to smooth out the spiciness and enhance the sweetness.

9.      The Products are misleading because (1) although labeled as "Vanilla," they have less (or no) real vanilla than the label represents, (2) they are flavored with artificial vanillin, (3) they contain more honey and cinnamon than vanilla and (4) despite the representation they are "Made with Natural Ingredients" that gives reasonable consumers the impression that all of the

---

[1] Cambridge Dictionary, Chai, Definition.

ingredients in are natural, they contain synthetic ingredients and artificial flavors.

## I.     Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

10.     The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized flavor commonly known as vanilla, defined by law as "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[2]

11.     Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[3]

12.     Though the Pure Food and Drugs Act of 1906 ("Pure Food Act") was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[4]

13.     It was evident that protecting consumers from fraudulent vanilla would be challenging, as E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[5]

14.     This demand could not be met by natural sources of vanilla, leading manufacturers to devise clever, deceptive and dangerous methods to imitate vanilla's flavor and appearance.

15.     Today, headlines tell a story of a resurgent global threat of "food fraud" – from olive

---

[2] 21 C.F.R. §169.3(c).

[3] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018.

[4] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[5] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

oil made from cottonseeds to the horsemeat scandal in the European Union.[6]

16.    Though "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

A.   Food Fraud as Applied to Vanilla

17.    Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[7]

18.    The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[8]

| Type of Food Fraud | Application to Vanilla |
|---|---|
| ➢ Addition of markers specifically tested for instead of natural component of vanilla beans | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Appearance of *more* and/or higher quality of the valued ingredient | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks the product contains real vanilla beans, when the ground beans have been exhausted of flavor |
| | • Caramel to darken the color of an imitation vanilla so it |

_____

[6] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.
[7] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.
[8] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

more closely resembles the hue of real vanilla[9]

- Annatto and turmeric extracts in dairy products purporting to be flavored with vanilla, which causes the color to better resemble the hue of rich, yellow butter

➢ Substitution and replacement of a high-quality ingredient with alternate ingredient of lower quality

- Tonka beans, though similar in appearance to vanilla beans, are banned from entry to the United States due to fraudulent use
- Coumarin, a toxic phytochemical found in Tonka beans, added to imitation vanillas to increase vanilla flavor perception

➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component

- Synthetically produced ethyl vanillin, from recycled paper, tree bark or coal tar, to imitate taste of real vanilla

- "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste"[10]
- Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[11]

➢ Compounding, Diluting, Extending

- "Spiking" or "fortification" of vanilla through addition of natural and artificial flavors including vanillin, which simulates vanilla taste but obtained from tree bark

➢ Addition of fillers to give

- Injection of vanilla beans with mercury, a poisonous

---

[9] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.
[10] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[11] Berenstein, 423.

| | |
|---|---|
| the impression there is more of the product than there actually is | substance, to raise the weight of vanilla beans, alleged in *International Flavors and Fragrances (IFF), Inc. v. Day Pitney LLP and Robert G. Rose,* 2005, Docket Number L-4486-09, Superior Court of New Jersey, Middlesex County |

- Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list
    - "ground vanilla beans" gives impression it describes unexhausted vanilla beans when actually it is devoid of flavor and used for aesthetics
    - "natural vanilla flavorings" – "-ing" as suffix referring to something *like* that which is described

➢ Ingredient List Deception[12]
    - "Vanilla With Other Natural Flavors" – implying – wrongly – such a product has a sufficient amount of vanilla to characterize the food
    - "Natural Flavors" – containing "natural vanillin" derived not from vanilla beans but from tree pulp. When paired with real vanilla, vanillin is required to be declared as an artificial flavor
    - "Non-Characterizing" flavors which are not identical to vanilla, but that extend vanilla

19.    The "plasticity of legal reasoning" with respect to food fraud epitomize what H. Mansfield Robinson and Cecil H. Cribb noted in 1895 in the context of Victorian England:

---

[12] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar.

the most striking feature of the latter-day sophisticator of foods is his knowledge of the law and his skill in evading it. If a legal limit on strength or quality be fixed for any substance (as in the case of spirits), he carefully brings his goods right down to it, and perhaps just so little below that no magistrate would convict him.

*The law and chemistry of food and drugs*. London: F.J. Rebman at p. 320.[13]

II.     Flavor Industry's Efforts to Use Less Vanilla, Regardless of any Shortages

20.     The "flavor industry" refers to the largest "flavor houses" such as Symrise AG, Firmenich, Givaudan, International Flavors and Fragrances (including David Michael), Frutarom and Takasago International along with the largest food manufacturing companies such as Unilever.

21.     The recent global shortage of vanilla beans has provided the flavor industry another opportunity to "innovate[ing] natural vanilla solutions…to protect our existing customers."[14]

22.     Their "customers" do not include the impoverished vanilla farmers nor consumers, who are sold products labeled as "vanilla" for the same or higher prices than when those products contained *only* vanilla.

23.     These efforts include (1) market disruption and manipulation and (2) the development of alternatives to vanilla which completely or partially replace vanilla.

A.     Attempts to Disrupt Supply of Vanilla to Create a "Permanent Shortage"

24.     The flavor industry has developed schemes such as the "Sustainable Vanilla Initiative" and "Rainforest Alliance Certified," to supposedly assure a significant supply of vanilla at stable, reasonable prices paid to the farmers.

25.     However, these programs make vanilla less "sustainable" by paying farmers to destroy their vanilla plants and produce palm oil under the pretense of "crop diversification."

26.     Other tactics include "phantom bidding," where "deep-pocketed" saboteurs claim

---

[13] Cited in Sébastien Rioux, "Capitalist food production and the rise of legal adulteration: Regulating food standards in 19th-century Britain," Journal of Agrarian Change 19.1 (2019) at p. 65 (64-81).
[14] Amanda Del Buono, Ingredient Spotlight, Beverage Industry, Oct. 3, 2016.

they will pay a higher price to small producers, only to vanish, leaving the farmers forced to sell at bottom dollar to remaining bidders.[15]

27.   The reasons for these counterintuitive actions is because the flavor industry benefits from high vanilla prices and the use of less real vanilla.

28.   When less vanilla is available, the customers of the flavor companies – food manufacturers – must purchase the higher margin, proprietary, "vanilla-like" flavorings made with advanced technology and synthetic biology.

**B.   Defendant's Parent Company, Kerry plc, Promotes the Use of Imitation Vanilla Instead of Real Vanilla**

29.   Though flavor companies will not admit their desire to move off real vanilla, this conclusion is consistent with the comments of industry executives.

30.   According to Suzanne Johnson, vice president of research at a North Carolina laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price," known as "Vanilla WONF."

31.   In fact, the head of "taste solutions" at defendant's parent company, Irish conglomerate Kerry plc, urged flavor manufacturers to "[G]et creative" and "build a compounded vanilla flavor with other natural flavors."

32.   A compounded vanilla flavor "that matches the taste of pure vanilla natural extracts" can supposedly "provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."[16]

33.   These compounded flavors exist in a "black box" with "as many as 100 or more flavor ingredients," including "naturally produced vanillin," potentiators and enhancers, like

---

[15] Monte Reel, The Volatile Economics of Natural Vanilla in Madagascar, Bloomberg.com, Dec. 16, 2019.
[16] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.

maltol and piperonal, blended together to enhance the vanilla, allowing the use of less vanilla to achieve the intended taste.[17]

34.     The numerous "naturally produced vanillins" are just as potent as their synthetic predecessors, such that "one ounce of vanillin is equal to a full gallon of single-fold vanilla extract."[18]

35.     Since only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant, which means that almost all vanillin has no connection to the vanilla bean.

C.     Decline of Industry Self-Governance

36.     That high-level executives in the flavor industry are willing to boast of their stratagems to give consumers less vanilla for the same or greater price is not unexpected.

37.     The once powerful trade group, The Flavor and Extract Manufacturers Association ("FEMA"), abandoned its "self-policing" of misleading vanilla labeling claims and disbanded its Vanilla Committee.

III.     Representations are Misleading Because They Misrepresent the Amount, Percentage and Type of Ingredients in the Products

38.     A food is considered misbranded it "its labeling is false or misleading in any particular."  21 U.S.C. § 343(a).

39.     A food label contains numerous pieces of information including a (1) statement of identity and/or common or usual name, (2) flavor designation and (3) ingredient list.

A.     Representations Are Misleading Because Product Contains More Honey than Vanilla

---

[17] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "That *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).
[18] Katy Severson, Imitation vs. Real Vanilla: Scientists Explain How Baking Affects Flavor, Huffington Post, May 21, 2019.

40.    A "statement of identity" is a "common or usual name" or an "appropriately descriptive term." *See* 21 C.F.R. § 101.3(b)(2)-(3).

41.    The Product is identified as "Vanilla and honey combine with premium black tea and chai spices." 21 C.F.R. § 102.5(a) (requiring common or usual name to "accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients.").

42.    The Product's common or usual name gives the impression that vanilla is present in an amount greater than the honey and chai spices because "Vanilla" is in the largest font above the statement of identity and highlighted on front label and vanilla is listed first in the statement of identity.

43.    The Product's labeling and appearance creates "an erroneous impression that such ingredient(s) or component(s) [vanilla] is present in an amount greater than is actually the case." 21 C.F.R. § 102.5(b).

44.    The Product's common or usual name fails to reveal that there is more honey than vanilla, indicated on the ingredient list:



**INGREDIENTS:** SUGAR, DRIED WHOLE MILK, DRIED NONFAT MILK, DRIED HONEY, TAPIOCA MALTODEXTRIN, INSTANT BLACK TEA, MALTODEXTRIN, SALT, NATURAL FLAVORS.

45.    "Dried Honey" is indicated as the fourth most predominant ingredient by weight, ahead of "Natural Flavors." 21 C.F.R. § 101.4(a)(1) (requiring ingredients "be listed by common or usual name in descending order of predominance by weight on either the principal display panel

or the information panel").

46.    The Product's ingredient list does not identify vanilla, chai spices or cinnamon, which means these components are part of the "Natural Flavors" ingredient.  See 21 C.F.R. § 101.22(h)(1) ("Spice, natural flavor, and artificial flavor may be declared as 'spice', 'natural flavor', or 'artificial flavor', or any combination thereof, as the case may be.").

B.    <u>GC-MS Analysis Determines the Flavor Composition and Representations are Inconsistent</u>

47.    Because the flavor components are part of the "Natural Flavor," consumers are unable to confirm that vanilla is the characterizing flavor compared to "chai spices" or cinnamon.

48.    GC-MS separates complex mixtures and quantifies aromatics, and determine what compounds are present in the greatest amount and percentage.[19]

49.    Beginning with the gas chromatograph ("GC"), a sample is vaporized and separated into its components by a capillary column.

50.    The compounds are "propelled by an inert carrier gas such as argon, helium or nitrogen" where they separate from each other and "elute from the column at different times, [which is] generally referred to as their retention times."

51.    After the components exit the GC column, "they are ionized by the mass spectrometer using electron or chemical ionization sources."

52.    The ionized molecules are accelerated through a mass analyzer and separated based on their unique mass-to-charge (m/z) ratios, the equivalent of a "flavor fingerprint."

53.    The m/z ratios are compared for a match against databases containing all known flavor compounds. [20]

---

[19] ThermoFisher Scientific, <u>Gas Chromatography Mass Spectrometry (GC/MS) Information</u>.
[20] <u>Id.</u>

54.     The result is a mass spectrum or chromatogram, a graph showing the elution times on the X-axis and amount or intensity on the Y-axis.

55.     The relative amounts of the detected compounds are indicated in columns two (Area Integration) and four (concentration parts per million or "Conc. PPM w/w.") of Table 1.

56.     When applied to the Products, GC-MS reveals the abundance of cinnamon flavor yet a trace, if any, of real vanilla. Exhibit A, GC-MS Report, January 31, 2020.

## Peak Assignment Table – p. 5

Table 1

Sheehan & Associates, P.C., Project #7609
Oregon Chai-Vanilla Chai Tea Latte Powder
Production Code: 080940002
Methylene Chloride Extract of with 1 ppm Matrix-Spiked Int. Std. by P&T-TD-GC-MS

Data File = TSQA3761

| MS Scan # | Area Integration | Peak Assignment | Conc. PPM w/w |
|---|---|---|---|
| 128 | 72979 | diacetyl | 0.03 |
| 320 | 47766 | butyric acid | 0.02 |
| 338 | 36325 | hexanal | 0.01 |
| 433 | 27923 | pentanoic acid | 0.01 |
| 521 | 62554 | alpha-pinene | 0.02 |
| 537 | 66939 | sabinene | 0.02 |
| 557 | 695994 | hexanoic acid + benzaldehyde | 0.24 |
| 565 | 48638 | 6-methyl-5-hepten-2-one | 0.02 |
| 571 | 205613 | myrcene | 0.07 |
| 577 | 69669 | beta-pinene | 0.02 |
| 587 | 40228 | octanal | 0.01 |
| 602 | 59100 | phellandrene | 0.02 |
| 607 | 151444 | alpha-terpinene | 0.05 |
| 613 | 76140 | 2-carene | 0.03 |
| 622 | 76381 | p-cymene | 0.03 |
| 630 | 12774499 | limonene | 4.45 |
| 638 | 14147018 | benzyl alcohol | 4.92 |
| 656 | 190521 | 2-hydroxybenzaldehyde + gamma-terpinene | 0.07 |
| 678 | 59982 | phenylmethyl formate | 0.02 |
| 688 | 181675 | terpinolene | 0.06 |
| 693 | 2055563 | linalool | 0.72 |
| 721 | 4714233 | maltol | 1.64 |
| 734 | 181833 | 2-cyclohexen-1-ol, 1-methyl-4-(1-methylethyl) | 0.06 |
| 744 | 31638 | limonene oxide | 0.01 |
| 756 | 561724 | octanoic acid | 0.20 |
| 761 | 201075 | benzyl acetate | 0.07 |
| 771 | 187033 | benzene propanal | 0.07 |
| 777 | 192043 | benzoic acid | 0.07 |
| 793 | 1573466 | 4-terpineol | 0.55 |
| 805 | 2108650 | alpha-terpineol | 0.73 |
| 810 | 2872727 | naphthalene-d8 (internal standard) | 1.00 |
| 835 | 162090 | linalyl acetate | 0.06 |
| 843 | 215384 | nerol | 0.07 |
| 849 | 200704 | 2-methoxybenzaldehyde | 0.07 |
| 853 | 92107 | carvone | 0.03 |
| 863 | 192007 | nonanoic acid | 0.07 |
| 909 | 159703856 | cinnamic aldehyde | 55.59 |
| 939 | 910471 | delta-elemene + alpha-terpineol acetate | 0.32 |
| 975 | 184660143 | eugenol | 64.28 |
| 988 | 6738967 | eugenyl methyl ether | 2.35 |
| 992 | 521400 | elemene | 0.18 |
| 1015 | 30885726 | vanillin | 10.74 |
| 1027 | 119802 | ? sesquiterpene | 0.04 |
| 1037 | 25387074 | caryophyllene | 8.84 |
| 1064 | 9588671 | dihydrocoumarin | 3.34 |
| 1068 | 1357977 | curcumene | 0.47 |
| 1086 | 12538585 | eugenyl acetate | 4.36 |
| 1092 | 1193079 | eremophylene | 0.42 |
| 1095 | 1178417 | cadinene | 0.41 |
| 1101 | 3293082 | delta-cadinene | 1.15 |
| 1110 | 1905777 | 2-methoxycinnamic aldehyde | 0.66 |
| 1174 | 920785 | caryophyllene oxide | 0.32 |
| 1117-1306 | 4674870 | complex mixture of sesquiterpenes, sesquiterpene alcohols & sesquiterpene oxides | 1.63 |
| 1311 | 63761 | benzyl benzoate | 0.02 |
| 1388 | 281463 | caffeine | 0.10 |
| | | **Total** | **169.76** |

Chromatogram – p. 6



C. Representations are Misleading Because Cinnamon is Present in Greater Amount than Vanilla

57.    The most concentrated compounds were eugenol (MS Scan # 975, 64.8 PPM) and

cinnamic aldehyde (MS Scan # 909, 55.59 PPM), most commonly obtained from cinnamon.

58.    High levels of eugenol and cinnamic aldehyde is not unsurprising based on the front

label picture of cinnamon cloves and reference to "chai spices."

15

59. Of the four vanilla marker compounds, only vanillin was detected at 10.74 PPM (MS Scan # 1015).

60. Consumers are misled because the Product contains more cinnamon than vanilla, even though the front label designates the primary characterizing flavor as "VANILLA" and lists "vanilla" ahead of "chai spices" in the statement of identity, causing them to reasonably expect the Products contain more vanilla than cinnamon.

61. Consumers, including plaintiffs, are not capable of knowing the proportion of cinnamon and vanilla in the "Natural Flavor" ingredient by looking at the ingredient list.

D. Products' Vanilla Taste Provided by Artificial Vanillin

62. The Products' characterizing flavor is "Vanilla," as this term appears in the largest font on the principal display panel and highlighted. See 21 C.F.R. § 101.22(i)(1) ("If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food, except that…").

63. Consumers expect the Products to contain enough actual vanilla from vanilla beans to provide a vanilla taste without other flavors that simulate, resemble, reinforce, enhance or extend the flavoring from vanilla. See 21 C.F.R. § 169.3(b)(1); 21 C.F.R.§§ 169.175-169.182 (standards of identity for vanilla products).

64. GC-MS can detect the four marker compounds used to authenticate vanilla:

16

| Compounds | Percent Present in Vanilla Beans |
|---|---|
| vanillin | 1.3-1.7 % |
| p-hydroxybenzaldehyde | 0.1% |
| vanillic acid | 0.05% |
| p-hydroxybenzoic acid | 0.03% |

65.   The only vanilla marker compound detected was vanillin, at 10.74 PPM (MS Scan # 1015) (Table 1).

66.   Because vanillin has the same chemical profile whether obtained from vanilla beans or produced synthetically, the absence of p-hydroxybenzaldehyde, p-hydroxybenzoic acid and vanillic acid is a molecular indicator that what tastes like vanilla is not from vanilla beans.

67.   Though the amount of real vanilla is non-detectable by advanced scientific means, it is likely present in a nominal amount far enough back in the supply chain so defendant can credibly and truthfully claim, "Yes, the Products contains vanilla (extract)."

68.   However, the Products' front label does not state "contains some vanilla" or "made with a drop of vanilla extract," but designates the characterizing flavor as "Vanilla" without qualifying terms.

69.   Since the vanilla ingredient is "hidden" as part of the "natural flavors" and the label promotes vanilla over other flavors, consumers and plaintiffs are unable to compare how much vanilla is in the Products compared to other flavor components.

70.   Consumers and plaintiffs are thus misled because the actual amount of vanilla is less than other flavors like cinnamon, despite representations to the contrary.

E.   Products' Vanilla Taste is Supplied by Vanillin, an Artificial Flavor

71.   Reasonable consumers are misled because the Products' vanilla taste is not supplied by vanilla but by artificial vanillin.

17

72.     The high level of vanillin detected, without the other marker compounds is consistent with industry practice where vanillin is added to a drop of real vanilla to "fortify" or "spike" a vanilla taste.

73.     Even if the vanillin component of the "Natural Flavors" qualifies as vanillin from a natural source and made through a natural process, the inclusion of vanillin with vanilla extract is prohibited and deceives consumers.

74.     This is because the "standards of identity for vanilla extract (21 CFR 169.175) and vanilla flavoring (21 CFR 169.177) do not provide for the use of vanillin," such that even "natural vanillin" may not "be used to make natural vanilla flavors."   Exhibit B, FDA Letter, Ferre-Hockensmith to Richard Brownell, Jr., April 19, 2005, pp. 1-2; *see* 21 C.F.R. § 169.175(a)(1)-(5) (listing glycerin, propylene glycol, sugar, dextrose and corn sirup as only optional ingredients for vanilla extract).

75.     The Products' front label is misleading because "Vanilla," without more, implies the Product's flavor "is a 'natural vanilla flavor'" even though naturally produced vanillin "is not derived from vanilla beans.  Exhibit C, FDA Letter, Ferre-Hockensmith to Richard Brownell, Jr., August 5, 2008, p. 2.

76.     When vanillin is added to a flavor containing vanilla extract, the ingredient list must say "contains vanillin, an artificial flavor (or flavoring)."  *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'.").

77.     "Vanillin made through a natural process" may be designated "'vanillin' or 'natural flavor' but it should not be done in a way to imply that it is a 'natural vanilla flavor' because it is

not derived from vanilla beans."  Exhibit D, FDA Letter, Negash Belay to Agneta Weisz, October 10, 2008; Exhibit C, FDA Letter, Ferre-Hockensmith to Richard Brownell, Jr., August 5, 2008, p. 2 (allowing vanillin to be labeled as a "natural flavor" only outside the context of the standardized vanilla ingredients "under sections 169.180, 169.181, and 169.182 in 21 CFR.").

78.     A plain reading of the flavor regulations coupled with the complete absence of non-vanillin marker compounds would require the Products be designated as "artificially flavored."

IV.     "Made with Natural Ingredients" is Deceptive and Misleading

79.     The front label claim "Made with Natural Ingredients" gives plaintiffs and consumers the impression that all the ingredients in the Product are natural.

Front Label



80.     In the context of the "vanilla" representations, "Made with Natural Ingredients" is false, deceptive and misleading because it gives plaintiffs and consumers the impression that the vanilla flavor in the Products is only from natural vanilla beans and not artificial vanillin.

81.     The GC-MS analysis reveals that while the Products may have a vanilla taste, it is

not from vanilla but from added vanillin, made from as wood pulp, clove oil or petroleum.

82.    In the context of vanilla ingredients, vanillin has never been considered a "natural" ingredient.

83.    When vanillin is used with real vanilla, it is required to be labeled an artificial ingredient. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains *vanillin, an artificial flavor* (or flavoring)'.") (emphasis added).

84.    In the context of the non-vanilla representations, the FDA interprets "natural" to mean "that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in that food."[21]   *See* 80 Fed. Reg. 69905, "Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments," Nov. 12, 2015 (stating FDA would maintain its policy "not to restrict the use of the term 'natural' except for added color, synthetic substances, and flavors.").

85.    "Made with Natural Ingredients" is false, deceptive and misleading because the Products contain synthetic ingredients including maltol (MS Scan # 721), 1.64 PPM, limonene (MS Scan # 630), 4.45 PPM and linalool (MS Scan # 693), 0.72 PPM.

86.    The FDA lists maltol as an ingredient in the section "Synthetic flavoring substances and adjuvants." *See* 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants.").

87.    Maltol is a flavor enhancer and synthetic flavoring substance which does not "contribute a flavor of its own" but is used to enhance and substitute for real vanilla, by increasing

---

[21] Use of the Term Natural on Food Labeling.

the sweetness of a food or beverage.[22]

88.     The FDA lists limonene and linalool as ingredients in the section "Synthetic flavoring substances and adjuvants." *See* 21 C.F.R. § 182.60.

89.     Given the presence of the synthetic ingredients – vanillin, maltol, limonene and linalool – defendant's representation that the Products are "Made with Natural Ingredients" is deceptive and misleading.

90.     Surveys and other market research, including expert testimony plaintiffs intend to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes the term "natural," when used to describe foods such as defendant's Vanilla Chai Products, means that it is free of synthetic ingredients.

91.     A reasonable consumer's understanding of the term "Made with Natural Ingredients" comports with that of federal regulators and common meaning.

92.     That is, the reasonable consumer understands the representation that a product is "Made with Natural Ingredients" to mean that it does not contain any synthetic or artificial ingredients.

93.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is "Made with Natural Ingredients," especially at the point of sale.

94.     Consumers would not know the true nature of the ingredients merely by reading the ingredient's labels.

95.     Discovering that the ingredients in the Vanilla Chai Products do not contain "Natural Ingredients" and are synthetic requires scientific investigation and knowledge of chemistry beyond

---

[22] 21 C.F.R. § 172.515(b) ("Synthetic flavoring substances and adjuvants."); Maltol, UL Prospector, Bryan W. Nash & Sons Ltd.1.   Linalool's concentration at 0.72 PPM exceeds more than half of the compounds detected by the GC-MS analysis, revealing its importance to the overall composition of the Product.

the average consumer.

96.     This difficulty is increased because the synthetic ingredients – vanillin, maltol, limonene and linalool – are not even listed on the label because they are part of the "Natural Flavor."

97.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk defendant's prominent front-of-pack claim, representation, and warranty that the Products are "Made with Natural Ingredients."

98.     The material misrepresentation that the Products are "Made with Natural Ingredients" induced consumers, including plaintiffs and class members, to pay a premium to purchase the Products.

99.     Even accepting the argument that "natural flavor" is an accurate designation of the flavor ingredient, it is misleading to represent the Products as "Made With Natural Ingredients" because "natural flavor" is not identical to "natural" as interpreted by the FDA. *See* 21 C.F.R. § 101.22(a)(3) ("natural flavor or natural flavoring means the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional.").

V.     Conclusion

100.   Whether or not a food's flavor is from the characterizing food ingredient, a flavor derived from the characterizing ingredient, a natural source unrelated to the characterizing flavor

or an artificial source is material to consumers who expect a label to be truthful and not misleading.

101.  Consumers seek to buy vanilla products where the vanilla flavor is only provided from vanilla beans, and avoid artificial flavors and flavors from sources other than the natural source material of a flavor for reasons including nutrition, health and/or the avoidance of chemicals and highly processed ingredients.

102.  Defendant's branding and packaging of the Products are designed to – and does – deceive, mislead, and defraud consumers and defrauded plaintiffs.

103.  Defendant sold more of the Products and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiffs Cosgrove and Crout.

104.  The value of the Products that plaintiffs purchased and consumed was materially less than its value as represented by defendant.

105.  Had plaintiffs and class members known the truth, they would not have bought the Products or would have paid less for them.

106.  As a result of the false and misleading labeling, the Products are sold at premium prices, approximately no less than $4.89 per 8 OZ box (1 OZ packets) and $5.49 per 10 OZ tin, excluding tax, compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

107.  Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

108.  Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

109.   Plaintiff Ryan Cosgrove is a citizen of New York.

110.   Plaintiff Amanda Crout is a citizen of New York.

111.   Defendant is a Oregon corporation with a principal place of business in Seattle, King County, Washington and is a citizen of Washington.

112.   Venue is proper because plaintiff Cosgrove and many class members reside in this District and defendant does business in this District and State.

113.   This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

114.   A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

115.   Plaintiff Ryan Cosgrove is a citizen of Bronx, Bronx County, New York.

116.   Plaintiff Amanda Crout is a citizen of Brooklyn, Kings County, New York.

117.   Defendant Oregon Chai, Inc. is a Oregon corporation with a principal place of business in Seattle, Washington, King County.

118.   During the relevant statutes of limitations, plaintiffs purchased the Products within their districts and/or States for personal consumption and/or use in reliance on the representations the Products' vanilla taste was only from real vanilla.

119.   Plaintiff Cosgrove purchased the Vanilla Chai Products in boxes of 1 OZ packets at Stop & Shop Supermarket, 5716 Broadway, Bronx, New York 10463, on multiple occasions in the end of 2018 and in the beginning of 2019.

120.   Plaintiff Cosgrove bought the Products because she liked chai, expected the vanilla flavor to only come from real vanilla beans because the front label lacked any reference to the Products being "flavored," thought that the Products would contain more vanilla than its other

flavoring components, did not state it contained vanillin, an artificial flavor when used with vanilla and she believed it only contained natural ingredients.

121.   Plaintiff Crout purchased the Vanilla Chai Products in the tin of 10 OZ at Target, 139 Flatbush Ave, Brooklyn, New York 11217 in the first half of 2019 and in the box of 1 OZ packets at Stop & Shop Supermarket, 625 Atlantic Ave, Brooklyn, New York 11217 in the middle of July 2019.

122.   Plaintiff Crout bought the Products because she liked chai, expected the vanilla flavor to only come from real vanilla beans because the front label lacked any reference to the Products being "flavored," thought that the Products would contain more vanilla than its other flavoring components, did not state it contained vanillin, an artificial flavor when used with vanilla and she believed it only contained natural ingredients.

123.   Plaintiff Cosgrove and Plaintiff Crout would buy the Vanilla Chai Products – in a box or tin – again if they were assured the vanilla flavor in the Products was only from real vanilla and did not come from non-vanilla sources and was only made with natural ingredients.

<u>Class Allegations</u>

124.   The class will consist of all purchasers of the Vanilla Chai 8 OZ boxes (1 OZ packets) and 10 OZ tins in New York during the applicable statutes of limitations.

125.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiffs and class members are entitled to damages.

126.   Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

127.   Plaintiffs are adequate representatives because their interests do not conflict with

other members.

128.  No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

129.  Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

130.  Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

131.  Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>
<u>(Consumer Protection Statute)</u>

132.  Plaintiffs incorporate by reference all preceding paragraphs.

133.  Plaintiffs and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

134.  Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

135.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

136.  Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the false impression to consumers that (1) the Products contain more vanilla than honey, (2) the Products contain more vanilla than cinnamon, (3) the vanilla flavor in the Products is only provided by vanilla beans because the "vanilla" statements are not qualified, (4) the Products do not contain artificial flavors such as vanillin to boost or spike a trace of vanilla and (5) the Products contain only natural ingredients.

137.  Plaintiffs relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

138.  Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

139.  Plaintiffs incorporate by reference all preceding paragraphs.

140.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

141.  Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the false impression to consumers that (1) the Products contain more vanilla than honey, (2) the Products contain more vanilla than cinnamon, (3) the vanilla flavor in the Products is only provided by vanilla beans because the "vanilla" statements are not qualified, (4) the Products do not contain artificial flavors such as vanillin to boost or spike a trace of vanilla and (5) the Products contain only natural ingredients.

142.  Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

143.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

144.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

145.  Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

146.   Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

147.   Plaintiffs incorporate by reference all preceding paragraphs.

148.   The Products were manufactured, labeled and sold by defendant and warranted to plaintiffs and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

149.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the false impression to consumers that (1) the Products contain more vanilla than honey, (2) the Products contain more vanilla than cinnamon, (3) the vanilla flavor in the Products is only provided by vanilla beans because the "vanilla" statements are not qualified, (4) the Products do not contain artificial flavors such as vanillin to boost or spike a trace of vanilla and (5) the Products contain only natural ingredients.

150.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

151.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

152.   Plaintiffs provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

153.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding this issue.

154.   The Products did not conform to their affirmations of fact and promises due to

defendant's actions and were not merchantable.

155.   Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

156.   Plaintiffs incorporate by reference all preceding paragraphs.

157.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the false impression to consumers that (1) the Products contain more vanilla than honey, (2) the Products contain more vanilla than cinnamon, (3) the vanilla flavor in the Products is only provided by vanilla beans because the "vanilla" statements are not qualified, (4) the Products do not contain artificial flavors such as vanillin to boost or spike a trace of vanilla and (5) the Products contain only natural ingredients.

158.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front labels, when it knew its statements were neither true nor accurate.

159.   Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

160.   Plaintiffs incorporate by reference all preceding paragraphs.

161.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiffs as representatives and undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   April 2, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

Law Offices of Peter N. Wasylyk
Peter N. Wasylyk (*PHV* to file)
1307 Chalkstone Ave
Providence RI 02908
Telephone: (401) 831-7730
Fax: (401) 861-6064
*pnwlaw@aol.com*


Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

1:19-cv-10686-KPF
United States District Court
Southern District of New York

Ryan Cosgrove, Amanda Crout, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

Oregon Chai, Inc.,

Defendant

## Second Amended Class Action Complaint

```
Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
    Tel: (516) 303-0552
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  April 2, 2020

/s/ Spencer Sheehan
Spencer Sheehan