United States District Court
Southern District of New York                    1:19-cv-10686-KPF

Ryan    Cosgrove,    Amanda    Crout,
individually  and  on  behalf  of  all  others
similarly situated,

                      Plaintiffs,

                - against -

Oregon Chai, Inc.,

                      Defendant

Plaintiffs' Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the Second Amended Complaint

SHEEHAN & ASSOCIATES
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

REESE LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*
Attorneys for Plaintiffs

# Table of Contents

Table of Authorities ............................................................................................... iv

Introduction ........................................................................................................... 1

Argument ............................................................................................................... 1

I.    Legal Standard ............................................................................................ 1

    A.    Factual Allegations Should Be Accepted as True ................................ 1

    B.    Plaintiffs Have Shown that it Is Plausible a Reasonable Consumer Would Be Misled ............................................................................... 2

II.    This Court Has Subject Matter Jurisdiction ................................................ 2

III.    Plaintiffs' Claims Are Not Preempted ........................................................ 3

    A.    Plaintiffs Use Federal Regulations as a Touchstone for Deceptive Behavior ........................................................................................... 5

    B.    Plaintiffs' Claims Cannot Be Preempted Because New York Has Adopted the Federal Labeling Laws ................................................... 6

IV.    Plaintiffs Properly Pleads GBL Claims ...................................................... 8

    A.    Front Label Vanilla Representation Is Misleading .............................. 9

        1.    Defendant Fails to Rebut Allegations About Product's Artificial Flavors ..................................................................... 13

        2.    Vanilla Representation Leads Reasonable Consumer to Believe the Products Contain More Vanilla Than Honey or Cinnamon .................................................................................. 15

    B.    "Made with Natural Ingredients" Representation Is Misleading .......... 16

    C.    What a Reasonable Consumer Believes Is a Fact-Based Inquiry ......... 17

V.    Plaintiffs Properly Alleged Common Law Claims ....................................... 18

    A.    Plaintiffs Properly Alleged Warranty Claims ..................................... 18

        1.    Plaintiffs Provided Timely Notice of Breach of Warranty Claims ................................................................................... 18

        2.    Label Created Breach of Express Warranty ............................. 19

    B.    Plaintiffs Properly Pled Negligent Representation and Fraud Claims ................. 20

        1.    Plaintiffs Pled Claims with Particularity .......................................................... 20

        2.    Plaintiffs Properly Pled Privity Relationship Between the Parties ...................................................................................................................... 21

   C.    Plaintiffs' Claims of Unjust Enrichment Are Not Duplicative ............................ 22

VI.   Plaintiffs Have Standing to Seek Injunctive Relief ............................................. 23

Conclusion ......................................................................................................................... 25

# Table of Authorities

## Cases

*Ackerman v. Coca-Cola Co.*,
No. 09-cv-00395, 2013 WL 7044866 (E.D.N.Y. July 18, 2013).................................. 4, 17, 24

*Aetna Cas. And Sur. V. Aniero Concrete Co., Inc.*,
404 F.3d 566 (2d Cir. 2005)................................................................................... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................................... 1, 2

*Astiana v. Ben & Jerry's Homemade, Inc.*,
No. 10-cv-4387, 2011 WL 2111796 (N.D. Cal. May 26, 2011).................................. 3

*Ault v. J.M. Smucker Co.*,
No. 13-cv-3409, 2014 WL 1998235 (S.D.N.Y. May 15, 2014) .............................. 19

*Avola v. La.-Pac. Corp.*,
No. 11-cv-4053, 2013 WL 4647535 (E.D.N.Y. Aug. 28, 2013) ....................... 19, 20

*Belfiore v. Procter & Gamble Co.*,
No. 14-cv-4090, 311 F.R.D. 29, 2015 WL 5781541 (E.D.N.Y. Oct. 5, 2015).................. 9, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................... 1, 2

*Buonasera v. Honest Co., Inc.*,
208 F. Supp 3d 555 (S.D.N.Y. 2016).................................................................. 19

*Burton v. Iyogi, Inc.*,
No. 13-cv-6926, 2015 WL 4385665 (S.D.N.Y. Mar. 16, 2015)............................ 23

*Carias v. Monsanto Co.*,
No. 15-cv-03677, 2016 WL 6803780 (E.D.N.Y. Sept. 30, 2016) ........................ 17

*Cohn v. Lionel Corp.*,
289 N.Y.S.2d 404 (1968)................................................................................... 23

*Comfort v. Ricola USA, Inc.*,
No. 19-cv-6089 (W.D.N.Y. Nov. 15, 2019) ................................................. 11, 12

*Cummings v. FCA US LLC*,
401 F. Supp. 3d 288 (N.D.N.Y. 2019)................................................................ 23

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ........................................................................... 24

*Eternity Glob. Master Fund. Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004)............................................................................... 22

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
   624 F.3d 106 (2d Cir. 2010)................................................................................. 1

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013)................................................................................. 8

*Fischer v. Mead Johnson Labs.*,
   41 A.D.2d 737, 341 N.Y.S.2d 257 (1st Dep't. 1973) ........................................ 18

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir.1995) .................................................................................. 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)........................................................................................... 23

*Gant v. Wallingford Bd. of Educ.*,
   69 F.3d 669 (2d Cir. 1995)................................................................................... 1

*Gold v. New York Life Ins. Co.*,
   730 F.3d 137 (2d Cir. 2013)................................................................................. 2

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   8 F. Supp 3d 467 (S.D.N.Y. 2014) ......................................................... 16, 19, 24

*Greene v. Gerber Products Co.*,
   262 F. Supp 3d 38 (E.D.N.Y. 2017) .................................................................. 22

*Hanley v. Chicago Title Ins. Co.*,
   No. 12-cv-4418, 2013 WL 3192174 (S.D.N.Y. June 24, 2013) ........................... 1

*Henry v. Daytop Vill., Inc.*,
   42 F.3d 89 (2d Cir.1994).................................................................................... 22

*Huang v. iTV Media, Inc.*,
   13 F. Supp. 3d 246 (E.D.N.Y. 2014) ................................................................. 23

*In re Frito-Lay N. Am., Inc. All Natural Litig.*,
   12-md-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)............................... 14

*Izquierdo v. Panera Bread Co.*,
   No. 18-cv-12127 (S.D.N.Y. Mar. 30, 2020) ................................................. 11, 12

*J.A.O.Acquisition Corp. v. Stavitsky*,
   8 NY3d 144 (2007) ........................................................................................... 21

*Jackson-Mau v. Walgreen Co.*,
   18-cv-04868, 2019 WL 5653757 (E.D.N.Y. Oct. 31, 2019) ................................. 23

*Jovel v. i-Health, Inc.*,
   No. 12-cv-5614 JG, 2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013)........................ 3

*Koenig v. Boulder Brands, Inc.*,
   995 F. Supp. 2d 274 (S.D.N.Y. 2014)................................................................. 14

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec*., LLC,
   797 F.3d 160 (2d Cir. 2015).............................................................................. 20

*Mandarin v. Wildenstein*,
   16 N.Y.3d 181 (2011) ...................................................................................... 21

*Mantikas v. Kellogg Company*,
   910 F.3d 633 (2d Cir. 2018)................................................................... 10, 11, 15

*Marotto v. Kellogg Co.*,
   No. 18-cv-3545, 2020 WL 509035 (S.D.N.Y. Jan. 31, 2020) ............................. 10

*Neri v. R.J. Reynolds Tobacco Co.*,
   No. 98-cv-371, 2000 WL 33911224 (N.D.N.Y. Sept.28, 2000)........................... 18

*NML Capital, Ltd. v. Republic of Argentina*,
   No. 05-cv-2434, 2009 WL 1528535
   (S.D.N.Y. May 29, 2009)................................................................................... 15

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d. Cir. 2015)............................................................................... 8

*Patane v. Nestle Waters North America, Inc.*,
   343 F. Supp. 3d 375 (D. Conn. 2018)............................................................... 4, 5

*Paulino v. Conopco, Inc.*,
   No. 14-cv-05145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ......................... 18

*Quiroz v. Beaverton Foods, Inc.*,
   No. 17-cv-7348 (E.D.N.Y. Mar. 31, 2019)........................................................... 5

*Ross v. Bolton*,
   904 F.2d 819 (2d Cir.1990)............................................................................... 21

*Sciortino v. Pepsico, Inc.*,
   108 F. Supp. 3d 780 (N.D. Cal. 2015) ................................................................. 4

*Silva v. Smucker Nat. Foods, Inc.*,
   No. 14-cv-06154, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ................................. 17, 18

*Sitt v. Nature's Bounty, Inc.*,
   No. 15-cv-4199, 2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016) ........................................... 17

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
   No. 14-cv-03826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ........................................ 17

*Troncoso v. TGI Friday's Inc.*,
   No. 1:19-cv-02735 (S.D.N.Y. June 8, 2020) ...................................................................... 18

*Verzani v. Costco Wholesale Corp.*,
   No. 09-cv-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) ........................................... 6

*Weisman v. LeLandais*,
   532 F.2d 308 (2d Cir. 1976).............................................................................................. 1

*Williams v. Calderoni*,
   2012 U.S. Dist. LEXIS 28723 (S.D.N.Y. Mar. 1, 2012) ..................................................... 2

*Williams v. Schwartz*,
   529 F. App'x 89 (2d Cir. 2013) ......................................................................................... 2

**Statutes**

21 U.S.C. § 341 .................................................................................................................... 3

21 U.S.C. § 343(g) ............................................................................................................... 3

21 U.S.C. § 343-1 ................................................................................................................ 3

21 U.S.C. § 343-1(a)(1) ....................................................................................................... 3

N.Y. Gen. Bus. Law § 349 ................................................................................................ 2, 6

N.Y. Gen. Bus. Law § 350 ................................................................................................ 2, 6

 **Rules**

Fed. R. Civ. P.  8(e)(2)....................................................................................................... 22

Fed. R. Civ. P.  9(b) ........................................................................................................... 20

Fed. R. Civ. P. 12(b)(6)....................................................................................................... 1

**Regulations**

1 NYCRR § 250.1(a) .......................................................................................................... 7

1 NYCRR § 250.1(a)(17) ............................................................................................ 7

1 NYCRR § 259.1(a) .................................................................................................. 7

1 NYCRR § 259.1(a)(3) .............................................................................................. 8

1 NYCRR § 259.1(a)(4) .............................................................................................. 7

21 C.F.R. § 101.22(h)(1) ........................................................................................... 15

21 C.F.R. § 101.22(i)(1) .............................................................................................. 8

21 C.F.R. § 102.5(a) ................................................................................................... 7

21 C.F.R. § 169.175 .................................................................................................. 13

21 C.F.R. § 169.3(b)(1) .............................................................................................. 9

21 C.F.R. § 172.515(b) ............................................................................................. 14

21 C.F.R. § 182.60 ................................................................................................... 14

## Federal Register

56 Fed. Reg. 60,530, Food Labeling: Proposed Rule; State Petitions Requesting
      Exemptions From Federal Preemption (Nov. 27, 1991) ............................................ 4

## Other Authorities

FDA Letter, Belay to Weisz, October 10, 2008 ......................................................... 13

FDA Letter, Ferré-Hockensmith to Brownell, April 19, 2005 .................................. 13

FDA Letter, Ferré-Hockensmith to Brownell, August 5, 2008 ................................. 13

**Introduction**

Plaintiffs submit this memorandum of law in opposition to Defendant's Memorandum of Law in Opposition ("Mem.") to Plaintiffs' Second Amended Complaint ("SAC") (ECF No. 25).

**Argument**

## I.    Legal Standard

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir. 1976)).

### A.    Factual Allegations Should Be Accepted as True

A court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-cv-4418, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*"). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

B.      Plaintiffs Have Shown that it Is Plausible a Reasonable Consumer Would Be
        Misled

A plaintiff needs only assert factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff's claim to relief must be "plausible on its face," *Id.* at 570, and a complaint fails if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557.

However, "[t]he plausibility standard [on a motion to dismiss] is not akin to a probability requirement." *Iqbal*, 556 U.S. at 559 129 S. Ct. at 1937. Plaintiff need only "nudge" their allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548; *Williams v. Calderoni*, 2012 U.S. Dist. LEXIS 28723, at *20 (S.D.N.Y. Mar. 1, 2012) (in evaluating a complaint under a Rule 12(b)(6) standard, the Court need not accept "implausible allegations or legal conclusions expressed as facts"), *aff'd*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013)

## II.    This Court Has Subject Matter Jurisdiction

The Class Action Fairness Act ("CAFA") confers original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000 and (2) minimal diversity. *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

At issue in this case is whether the amount in controversy exceeds the statutory minimum of $5,000,000. Defendant contends that it does not. Mem. at 4-5. In so calculating the proposed amount in controversy, Defendant relies on the statutorily provided relief of $50 per claim provided by G.B.L. § 349(h) (any person who has been injured may bring an action to recover "his actual damages or fifty dollars, whichever is greater.").

Notably, Defendant does not include any damage calculation from G.B.L. § 350. Specifically, G.B.L. § 350(e) allows:

Any person who has been injured by reason of any violation of section three hundred fifty or three hundred fifty-a of this article may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars, whichever is greater, or both such actions.

Defendant claims to have sold 48,743 boxes of the Product during the relevant time period and 8992 tins of the Product during the relevant time period. Pursuant only to damages recovered under G.B.L. § 349(h) and G.B.L. § 350(e), Plaintiffs could recover as much as $28,867,500 from the G.B.L. § 350(e) claim and $2,886,750 from the G.B.L. § 349(h) claim.

## III.   Plaintiffs' Claims Are Not Preempted

In 1990, Congress enacted the Nutrition Labeling and Education Act of 1990, Pub. L. No. 101–535, 104 Stat. 2353 (the "NLEA"), which added an express preemption provision to the Federal Food, Drug, and Cosmetic Act ("FDCA"). 21 U.S.C. § 343-1; *Jovel v. i-Health, Inc.*, No. 12-cv-5614 JG, 2013 WL 5437065, at *3 (E.D.N.Y. Sept. 27, 2013). Under the provision, no state "may directly or indirectly establish . . . any requirement for a food which is the subject of a standard of identity established under [21 U.S.C. § 341] that is not identical to such standard of identity or that is not identical to the requirement of [21 U.S.C. § 343(g)]." 21 U.S.C. § 343-1(a)(1).

"The purpose of the NLEA . . . is not to preclude all state regulation of nutritional labeling, but to 'prevent State and local governments from adopting *inconsistent* requirements with respect to the labeling of nutrients.'" *Astiana v. Ben & Jerry's Homemade, Inc.*, 10-cv-4387, 2011 WL 2111796, at *8 (N.D. Cal. May 26, 2011) ("*Ben & Jerry's*") (emphasis added) (quoting H.R. Rep. No. 101–538, at 10 (1990)). Thus, if Plaintiffs seek to bring an action under state consumer protection law alleging Defendant's Product labeling is inconsistent with federal regulations and their identical state-level counterparts, the NLEA does not expressly preempt the state law claim. *Jovel*, 2013 WL 5437065, at *3 (NLEA preemption clause "has been repeatedly interpreted not to

3

preempt requirements imposed by state law that effectively parallel or mirror the relevant sections of the NLEA").

Congress expressly limited the NLEA's preemptive reach, stating that the statute "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343-1]." NLEA § 6(c), 104 Stat. at 2364; *see New York State Rest. Ass'n*, 556 F.3d at 123. The note on construction "provides an 'express definition of the pre-emptive reach' of the NLEA." *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 797 n.5 (N.D. Cal. 2015). "Congress's enacted note on construction has the 'force of law' and 'works together' with the statute." *Id.* As the FDA has explained, the note "clearly manifests Congress' intention" that the NLEA is not to preempt state law beyond its express terms. State Petitions Requesting Exemption From Federal Preemption, 56 Fed. Reg. 60,528, 60,530 (Nov. 27, 1991).

Thus, an analysis of federal preemption of the FDCA looks at two separate provisions: express preemption under 21 U.S.C. § 343-1(a), discussed above, and implied preemption under 21 U.S.C. § 337(a). Express preemption preempts any state from imposing any labeling laws that are not consistent with federal requirements. *Patane v. Nestle Waters North America, Inc.*, 343 F. Supp. 3d 375, 384-85 (D. Conn. 2018). Nowhere at issue in this case is an allegation that Plaintiffs seek to enforce requirements that differ from the federal regulatory regime. *See Ackerman v. Coca-Cola Co.*, No. 09-cv-00395, 2013 WL 7044866, at *6 (E.D.N.Y. July 18, 2013) ("New York . . . broadly prohibits the misbranding of food in language largely identical to that found in the FDCA.").

Instead, Defendant claims that Plaintiffs' allegations are preempted by the implied preemption of 21 U.S.C. § 337(a). Mem. at 10 ("The law is clear: there is no private right of action to enforce the FDCA."). In order to survive preemption, "a state law claim must rely on an

independent state law duty that parallels or mirrors" the duty required by the FDCA. *Patane*, 343 F. Supp. 3d at 386. That is, if a state has incorporated all or part of the FDCA into its state laws, then a plaintiff may move forward with a suit since that suit will not "solely and exclusively rely on violations of the FDCA's own requirements." *Id.*

Against this regulatory backdrop, Defendant claims, "Plaintiffs' 'true purpose' is to privately enforce the FDCA." Mem. at 9. That is not the case for two reasons: (1) What Defendant believes are excessive citations to federal regulations are instead illustrations of deceptive behavior using federal law as a touchstone and (2) the laws that Defendant claims "cannot serve the basis for any of Plaintiffs' state law claims" have been wholly incorporated into New York State law and thus create an independent state law duty.

A. Plaintiffs Use Federal Regulations as a Touchstone for Deceptive Behavior

Defendant alleges that "wholly absent from Plaintiffs' allegations is an explanation of how the ordinary consumer, unfamiliar with the complex regulatory scheme and not fluent in FDA correspondence, would be misled" by Defendant's labeling. Mem. at 9. However, Plaintiffs do not cite frequently to federal statutes because they seek to stand in the shoes of the FDA or any other government agency. Instead, Plaintiffs cite to federal regulations and FDA guidance because those offer useful signposts as to what constitutes deceptive labeling.

*Quiroz v. Beaverton Foods, Inc.*, No. 17-cv-7348 (E.D.N.Y. Mar. 31, 2019) is instructive on this point. In that case, the plaintiff contended that the defendant's product, mustard marketed as containing "no preservatives," contained citric acid. In support of her contention, the plaintiff referred to the statutory definition of a preservative. There, the court denied the defendant's motion to dismiss finding that the plaintiff's claim was "not premised on a violation of federal labeling requirements" but instead "it is based on the contention that the label 'no preservatives' is misleading because the product does in fact contain preservatives." *Id.*

The same logic applies to this case. Plaintiffs cite often to statutory definitions and requirements because they are the best touchstone available to define what is deceptive behavior. At the heart of the allegations, however, is an inherently deceptive act that would be deceptive "regardless of the existence of the FDCA and its implementing regulations." *Id.*

Defendant relies upon *Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) for the proposition that Plaintiffs' claims here are preempted because the "FDCA lacks a private right of action and therefore [plaintiff] cannot rely on it for the purposes of asserting a state law consumer claim under G.B.L. § 349." As discussed in detail in the following section, this construction misconstrues Plaintiffs' argument. Because New York has adopted the federal labeling regulations, Plaintiffs are not relying on federal law to assert a state claim. Instead, Plaintiffs are asserting a state claim under G.B.L. §§ 349 and 350 and premising these claims upon the federal labeling regulations which have been incorporated by New York.

B. <u>Plaintiffs' Claims Cannot Be Preempted Because New York Has Adopted the Federal Labeling Laws</u>

Courts routinely recognize that state law causes of action are not preempted if they "seek to impose requirements that are identical to those imposed by the FDCA." *Id.* at *6. This is so because "a state statute mirroring its federal counterpart does not impose any additional requirement merely by providing a damages remedy for conduct that would otherwise violate federal law, even if the federal statute provides no private right of action." *Id*

Defendant's failure to identify New York's parallel and identical food labeling laws was likely stymied by the relative disorganization of these regulations, as they are spread across ten chapters, each with various Subchapters, Parts and Sections.

For instance, locating the sections of 1 NYCRR which specifically incorporate the FDCA labeling requirements entails drilling down to Chapter VI., Food Control, Subchapter C., Food and

6

Food Products, Part 259, § 259.1 ("Packaging and labeling of food.") ("the commissioner hereby adopts the current regulations [Parts 100-102] as they appear in title 21 of the *Code of Federal Regulations*").  *See* 1 NYCRR § 259.1(a).

New York has also incorporated the standards for vanilla products. *See* 1 NYCRR § 250.1(a)(17) ("the commissioner hereby adopts the following as the standards of identity and/or standards of quality, and tolerances for food and food products as published in title 21 of the Code of Federal Regulations . . . 21 C.F.R. part 169 containing the Federal definitions and standards for *Food Dressings and Flavorings* at pages 600-606"). 1 NYCRR § 250.1(a)(17), Section 250.1, Foods, Part 250, Definitions and Standards, Subchapter C, Food and Food Products, Chapter VI, Food Control, Title I.

The non-dairy standardized foods – including vanilla – are placed within Part 250, "Definitions and Standards." *See* 1 NYCRR § 250.1(a)(17) (incorporating federal standards of identity for foods including vanilla products at "21 CFR part 169, containing the Federal definitions and standards for *Food Dressings and Flavorings* at pages 600-606.").

All food products are required to have "common or usual name" which "accurately identif[ies] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." *See* 21 C.F.R. § 102.5(a); adopted in its entirety by New York at 1 NYCRR § 259.1(a)(4) ("the commissioner hereby adopts the current regulations as they appear in title 21 of the Code of Federal Regulations (revised as of April 1, 2013; U.S. Government Printing Office, Washington, D.C. 20402), in the area of food packaging and labeling a follows . . . (4) Part 102 of title 21 of the Code of Federal Regulations, containing the Federal definitions and standards for Common or Usual Name for Nonstandardized Food at pages 173-180."). 1 NYCRR § 259.1(a)(4), Section 259.1, Packaging and labeling of food, Part 259,

Packaging and labeling of food, Subchapter C, Food and Food Products, Chapter VI, Food Control, Title 1.

Where a product makes a representation as to its primary flavor, the truthful and non-misleading designation of that flavor is required to become part of the common or usual name. *See* 21 C.F.R. § 101.22(i)(1) ("If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered a characterizing flavor . . .); adopted in its entirety by New York at 1 NYCRR § 259.1(a)(3) ("the commissioner hereby adopts the current regulations as they appear in title 21 of the Code of Federal Regulations (revised as of April 1, 2013; U.S. Government Printing Office, Washington, D.C. 20402), in the area of food packaging and labeling as follow . . . (3) Part 101 of title 21 of the Code of Federal Regulations, containing the Federal definitions and standards for Food Labeling (including Appendices) at pages 10-172.").

The result of this regulatory scheme is that New York State labeling requirements for this Product are identical to their federal counterparts, and therefore this case is not preempted by federal regulations.

## IV.    Plaintiffs Properly Pleads GBL Claims

"To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d. Cir. 2015). Though defendant asserts the issues before the Court are unambiguous, a closer look reveals nuance and context, requiring a fact-intensive analysis. *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("[I]n determining whether a reasonable

consumer would have been misled by a particular advertisement, context is crucial") citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995); *Belfiore v. Procter & Gamble Co.*, No. 14-cv-4090, 311 F.R.D. 29, 38, 2015 WL 5781541, at *35 (E.D.N.Y. Oct. 5, 2015) (to establish a prima facie case under GBL § 349, "The entire mosaic is viewed rather than each tile separately.").

    A.    <u>Front Label Vanilla Representation Is Misleading</u>

Defendant roundly states that "no consumer would find the use of 'vanilla' on the box misleading." Mem. at 12. Leaving aside, for the moment, the frequency with which Defendant seeks to speak for the reasonable consumer, the Second Amended Complaint ("SAC") establishes a clear basis for finding that Defendant's Products are deceptively labeled.

Put simply, Defendant's Products are misleading because "vanilla," as stated without qualification on the label, gives to consumers the impression that more real vanilla was used in the Products than is actually present. Defendant circles around yet never squarely addresses this point. For explanations, Defendant offers several variations on the same theme. "The Products likely do contain some real vanilla." Mem. at 12-13. A reasonable consumer would not "assume from the term 'vanilla' that no other ingredients were used in connection with the vanilla flavor." Mem. at 13. "No reasonable consumer would read the statement 'vanilla' to mean the Products are flavored only with pure vanilla beans." *Id*.

These arguments ignore a central contention of Plaintiffs' complaint: "Consumers expect the Products to contain enough actual vanilla from vanilla beans to provide a vanilla taste without other flavors that simulate, resemble, reinforce, enhance or extend the flavoring from vanilla." SAC ¶ 63 (citing 21 C.F.R. § 169.3(b)(1) and 21 C.F.R. §§ 169.175-169.182 (standards of identity for vanilla products)). Defendant's unambiguous labelling of the Product as "vanilla" gives this impression. It is clear that Defendant fails to meet the requirements of both federal regulations and consumer expectation that a Product labeled "vanilla" will contain a sufficient amount of real

vanilla to independently characterize the Product and that it will contain this real vanilla in greater proportion than it contains other artificial and/or lesser quality ingredients that simulate real vanilla.

For the contention that "the use of the word vanilla is not misleading," Defendant cites only one New York case: *Marotto v. Kellogg Co.*, No. 18-cv-3545, 2020 WL 509035 (S.D.N.Y. Jan. 31, 2020). In that case, the question before the court was whether an image of a vinegar bottle on the front of a package of potato chips indicated to reasonable consumers that "*only* vinegar was used" causing these reasonable consumers to place a price premium on the product. *Id*. at *3.

Where *Marotto* differs from the case at hand is that here, Plaintiffs are not arguing that *only* real vanilla is used. Instead, as stated above, Plaintiffs argue that *less* real vanilla has been used than is indicated by the "vanilla" label.

The Second Circuit recently addressed food labeling issues in *Mantikas v. Kellogg Company*, 910 F.3d 633 (2d Cir. 2018), a case which is conspicuously absent from Defendant's analysis. This case and its progeny are clearly on point here and stand for the proposition that Defendant's Products are deceptively labeled by giving to consumers the impression that *more* real vanilla is used in the Products than is actually the case.

In *Mantikas*, the district court dismissed a complaint that alleged false advertising and deceptive business practices under the GBL, as well as under California law. The subject of the litigation was a cracker sold in boxes with the words "WHOLE GRAIN" or "MADE WITH WHOLE GRAIN" in large letters on the front. The district court determined that because the ingredients list was on the side of the box, any consumer who thought the crackers were made entirely with whole grains could see the first ingredient was enriched white flour, not whole grain. The district court granted the defendant's motion to dismiss. In reversing, the Second Circuit held

10

that even though the crackers, in fact, contained whole grain and the front of the box accurately stated the amount of whole grain in the crackers per serving, "the conspicuous 'WHOLE GRAIN' and 'Made with WHOLE GRAIN' claims on the front and center of the Defendant's packaging communicates to the reasonable consumer the false message that the grain content of the crackers is exclusively, or at least predominately whole grain . . ." *Mantikas*, 910 F.3d at 638–39. In other words, technical accuracy does not dispel a plaintiff's claim that a defendant's conduct is plausibly deceptive.

As applied to the instant case, *Mantikas* stands for the proposition that Defendant cannot conspicuously display "vanilla" on its front label, reaping the benefits of consumer understanding of that term, and rely upon technical accuracy of its ingredient list and nutritional panel to dispel the initial deception. "Vanilla" is in the largest font on the Product's principal display panel. SAC ¶ 62. This gives consumers the impression that the Product's flavor "is a 'natural vanilla flavor.'" SAC ¶ 75.

In *Mantikas*, the defendant advertised their products as whole grain when the main ingredient was refined white flour. Similarly, Oregon Chai advertises the Product as containing predominantly real vanilla when there is less vanilla than other flavorings and the Product is predominantly flavored by artificial vanilla flavor. SAC ¶ 71

Two cases since *Mantikas* are instructive: *Izquierdo v. Panera Bread Co.*, No. 18-cv-12127 (S.D.N.Y. Mar. 30, 2020) and *Comfort v. Ricola USA, Inc.*, No. 19-cv-6089 (W.D.N.Y. Nov. 15, 2019).

In *Izquierdo*, plaintiff relied on defendant's representations that "blueberry" bagels purchased in defendant's store were made with a sufficient amount of real blueberries to characterize the product. The court refused to dismiss the case stating its understanding of

*Mantikas* to be, "It is materially misleading to suggest a product contains a greater proportion of a preferred ingredient than it actually does, even where there is a visible ingredients list that states the correct composition of the food." *Izquierdo*.

*Izquierdo* noted that "defendant's labeling and advertising related to the 'blueberry' composition of the bagel or to the health of its products or transparency of its ingredients lists" was not very extensive yet still found for the plaintiff. In so doing, the court relied on the fact that the "imitation blueberry component exceeds the real blueberry component." *Id*.

Plaintiffs make the same argument here. The conspicuous labeling of the Product as "vanilla," without qualification, gives consumers the false impression that the chai tea contains more real vanilla than it does artificial vanilla, honey, chai spices or cinnamon. SAC ¶ 71-72 ("The high level of vanillin detected, without the other marker compounds is consistent with industry practice where vanillin is added to a drop of real vanilla to 'fortify' or 'spike' a vanilla taste."); SAC ¶ 136. The plaintiff in *Izquierdo* did not contend that the bagels contained *no* blueberries, just as Plaintiffs here do not contend that the Product contains *no* vanilla. In *Izquierdo*, a reasonable consumer would expect that the bagel contain more real blueberries than imitation ones; here, a reasonable consumer would expect, given the label, that the Product would contain more real vanilla than artificial vanilla.

Finally, in *Comfort v. Ricola*, the plaintiff contended that defendant's product made the materially misleading statement "Naturally Soothing" when the product contained artificial and synthetic ingredients. *Comfort* stands for the proposition that a defendant may not avail itself of the defense that its front label representations are "ambiguous" and hope to dispel that ambiguity through reference to the sides or back of the package. At best, Defendant's claim of "Vanilla"

12

creates an ambiguity that Defendant attempts to profit from but that is ultimately deceptive to consumers.

### 1.     Defendant Fails to Rebut Allegations About Product's Artificial Flavors

Defendant generally ignores Plaintiffs' contention that the Products are mislabeled because they contain artificial flavors that are not disclosed on the label or the ingredient list. *See e.g.* SAC ¶ 71 ("Reasonable consumers are misled because the Products' vanilla taste is not supplied by vanilla but by artificial vanillin.).

The "standards of identity for vanilla extract (21 C.F.R. § 169.175) and vanilla flavoring (21 C.F.R. § 169.177) do not provide for the use of vanillin" such that even "natural vanillin" may not "be used to make natural vanilla flavors." *See* SAC Exhibit B, FDA Letter, Ferré-Hockensmith to Brownell, April 19, 2005; *see also* 21 C.F.R. § 169(a)(1)-(5) (listing glycerin, propylene glycol, sugar dextrose and corn sirup as only optional ingredients for vanilla extract.).

The SAC alleges Defendant includes vanillin from non-vanilla sources in the Product but the implication from failing to disclose this powerful ingredient is that consumers get the false impression that the Product's "Natural Flavor" is a "'natural vanilla flavor[s]' [although] it is not derived from vanilla beans." *See* SAC Exhibit D, FDA Letter, Belay to Weisz, October 10, 2008; SAC ¶ 77.

The FDA letters do nothing more than support the pre-existing vanilla regulations, which requires vanillin be designated as an artificial flavor when used with vanilla.  *See* 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'"); SAC, Exhibit C, FDA Letter, Ferré-Hockensmith to Brownell, August 5, 2008 (naturally derived vanillin may be labeled a "natural flavor" only outside the context of the standardized vanilla ingredients "under sections 169.180, 169.192 in 21 C.F.R.")

Defendant's use of vanillin *with* vanilla requires the Product be labeled "artificially flavored" to alert consumers to the quality of the product they will be purchasing. *See Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 287-88 (S.D.N.Y. 2014) (distinguishing *Verzani* where a reasonable consumer might focus on the most prominent portion of a product label that is potentially deceptive to a reasonable consumer).

The FDA's industry guidance letters are evidence that a reasonable consumer may be deceived or confused based on the representations made by Defendant regarding the vanilla content of the Product. *See In re Frito-Lay N. Am., Inc. All Natural Litig.*, 12-md-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) (holding that what a reasonable consumer would believe the term "natural" to mean is not resolvable on a motion to dismiss where "the FDA has acknowledged that the term's use is confusing to consumers.").

The SAC also plausibly alleges the Product contains maltol, limonene and linalool, which are synthetic ingredients. SAC ¶¶ 86-88. The FDA categorizes maltol, limonene and linalool in sections called "Synthetic flavoring substances and adjuvants." *See* 21 C.F.R. § 172.515(b) and 21 C.F.R. § 182.60. Given the presence of synthetic ingredients – vanillin, maltol, limonene and linalool – Defendant's representation that the Products are "Made with Natural Ingredients" is deceptive and misleading. SAC ¶ 89.

Defendant offers no refutation to these arguments because it cannot do so. Either the Product derives all its vanilla flavor from vanilla beans – which Defendant concedes it does not – or it is deceptively labeled because it contains artificial vanilla and other non-natural ingredients, requiring the Product to be labeled as "artificially flavored." The only possible conclusion for this failure, notwithstanding defendant's expected rebuttal in its reply brief – is that Plaintiffs' allegations are on point. *NML Capital, Ltd. v. Republic of Argentina*, No. 05-cv-2434, 2009 WL

1528535, at *1 (S.D.N.Y. May 29, 2009) (holding that defendant waived an argument by failing to raise it in its opposition to the plaintiffs' motion).

> 2. *Vanilla Representation Leads Reasonable Consumer to Believe the Products Contain More Vanilla Than Honey or Cinnamon*

Defendant contends, "No consumer would be misled into believing the Products contained more vanilla than honey or cinnamon based on the front label." Mem. at 14. Defendant states this because "the descriptive language pointed to by Plaintiffs merely communicates to the buyer how she can expect the product to taste." *Id*. To this end, Defendant incorrectly claims the "purportedly confused consumer could quickly dispel their confusion by turning the Products over and seeing" the true composition of the ingredients, listed by weight. *Id*.

The SAC noted that Defendant's deceptive conduct was unable to be "double checked" by Plaintiffs because the "ingredient list does not identify vanilla, chai spices or cinnamon," since these "components are part of the "Natural Flavors" ingredient. *See* SAC ¶ 46 citing 21 C.F.R. § 101.22(h)(1) ("Spice, natural flavor, and artificial flavor may be declared as 'spice', 'natural flavor', or 'artificial flavor', or any combination thereof, as the case may be.").

Further, Defendant fails to cite or distinguish *Mantikas*. In *Mantikas*, the court rejected the argument made by the defendant that a reasonable consumer could simply look at the side panel of the packaging which "discloses further detail about the product's ingredients." 910 F.3d at 637. Such an argument should be equally unavailing here. Defendant's more conspicuous representation of "Vanilla" on the front label in a style more pronounced than honey or cinnamon gives reasonable consumers the impression that the Product will contain a greater amount of vanilla than honey, chai spices and cinnamon.  Neither Defendant nor this court can expect the consumer, faced with myriad options at the point-of-sale, to resort to the ingredient list to dispel

confusion caused by the front-of-box representations, notwithstanding that the term "Natural Flavor" would fail to provide clarification.

B.   "Made with Natural Ingredients" Representation Is Misleading

Defendant argues that the front-label representation on the Products of "Made With Natural Ingredients" is not deceptive because it is technically true. That is, because the Products contain *some* natural ingredients, Defendant may make a front label claim that highlights *only* its natural ingredients. Taken to its logical conclusion, Defendant's argument would allow "Made With Natural Ingredients" stamped on any product that contained water and sugar, like candy. This stance is controverted by precedent and common sense.

Defendant states "[t]he use of the word 'natural' alone does not convey that a product is composed exclusively of natural ingredients." Mem. at 15. However, highlighting a singular or group of ingredients without highlighting them all requires truthful and non-deceptive advertising.

Applicable case law demonstrates the untenability of Defendant's position. *Goldemberg v. Johnson & Johnson Consumer Companies*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014) concerns, like here, "advertising that touts one particular aspect of the particular product." *Id*. at 479. In *Goldemberg*, the defendant advertised cosmetic products branded "Active Naturals" yet failed to inform the consumer that the products contained synthetic ingredients. *Id*. at 471-7. The defendant in *Goldemberg* allegedly failed "to adequately inform consumers that most of the ingredients are synthetic and unnatural because the ingredient list on the back of the packaging is in small, hard to read print and Defendant does not otherwise inform customers that most ingredients are synthetic." *Id*. at 471.

The *Goldemberg* court analyzed these claims and largely denied the defendant's motion to dismiss, not finding convincing defendant's argument that "it is unreasonable to assume each [] product contains exclusively natural ingredients when its labeling affirmatively identifies its one

or two natural ingredients as well as the synthetic ingredients." *Id*. at 479. *See also*, *Ackerman v. Coca-Cola Co.*, No. 09-cv-0395, 2010 WL 2925955 at *27 (E.D.N.Y. July 21, 2010 ("The potential for confusion is heightened by the presence of other statements . . . which have the potential to reinforce a consumer's mistaken belief that the product is comprised of only [some of the product's ingredients].").

Defendant makes the same argument in this case and it should be equally unavailing, contending that "the label communicates to the consumer that some portion of the ingredients contained within the product are natural." Mem. at 15. *See Mantikas*, 910 F.3d at 638–39 (technical accuracy does not dispel a plaintiff's claim that a defendant's conduct is plausibly deceptive).

C.      What a Reasonable Consumer Believes Is a Fact-Based Inquiry

Whether a reasonable consumer would be misled is usually a question of fact, and courts are reluctant to dismiss such claims on a motion to dismiss. *See, e.g.*, *Carias v. Monsanto Co.*, No. 15-cv-03677, 2016 WL 6803780, at *9 (E.D.N.Y. Sept. 30, 2016) ("[T]he instant litigation may very well turn on discrete factual questions"); *Sitt v. Nature's Bounty, Inc.*, No. 15-cv-4199, 2016 WL 5372794, at *8 (E.D.N.Y. Sept. 26, 2016) ("Usually the reasonable consumer determination is a question of fact") (citations omitted) (quotations omitted); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-cv-03826, 2015 WL 5579872, at *4, *13–23 (E.D.N.Y. Sept. 22, 2015) (declining to dismiss complaint, noting "A federal trial judge, with a background and experience unlike that of most consumers is hardly in a position to declare that reasonable consumers would not be misled" (citations omitted) (quotations omitted); *Silva v. Smucker Nat. Foods, Inc.*, No. 14-cv-06154, 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) ("What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss."); *Paulino v. Conopco, Inc.*, No. 14-cv-05145, 2015 WL 4895234, at *1, *5–6 (E.D.N.Y. Aug. 17, 2015) ("A reasonable juror could reach the

conclusion that the label 'Naturals' means that the product is at least mostly comprised of natural ingredients"); *Ackerman*, 2010 WL 2925955at \*6, \*22–23 (court cannot conclude that a reasonable consumer would not be misled as a matter of law); *Troncoso v. TGI Friday's Inc.*, No. 1:19-cv-02735 (S.D.N.Y. June 8, 2020) (court cannot "conclude as a matter of law" that general public would not be deceived by front label representations).

Here, Defendant makes copious conclusory statements about what a reasonable consumer will believe. Mem. at 12 ("No consumer would find the use of 'vanilla' on the box misleading"); Mem. at 13 ("Nor would a consumer acting reasonably assume from the term 'vanilla' that no other ingredients were used in connection with the vanilla flavor"); Mem. at 13 ("No reasonable consumer would read the statement 'vanilla' to mean the Products are flavored only with pure vanilla beans"); Mem. at 14 ("No consumer would be misled into believing the Products contained more vanilla than honey or cinnamon based on the front label"); Mem. at 15 ("Instead, the label communicates to the consumer that some portion of the ingredients contained within the product are natural"). What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss." *Silva*, at \*10.

## V.     Plaintiffs Properly Alleged Common Law Claims

### A.     Plaintiffs Properly Alleged Warranty Claims

#### *1.     Plaintiffs Provided Timely Notice of Breach of Warranty Claims*

Defendant's argument with respect to the lack of pre-suit notice fails because New York Courts have created an exception to the notice requirement for retail customers. *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-cv-371, 2000 WL 33911224, at \*19 (N.D.N.Y. Sept.28, 2000); See also *Fischer v. Mead Johnson Labs.*, 41 A.D.2d 737, 737, 341 N.Y.S.2d 257 (1st Dep't. 1973) (overturning the Special Term and holding "the prescription of timely notice under the code provisions is to be applied, if at all, differently in commercial and retail sales situations.").

2.      *Label Created Breach of Express Warranty*

"To state a claim for breach of an express warranty, "a plaintiff must allege an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon the plaintiff's detriment." *Buonasera v. Honest Co., Inc.*, 208 F. Supp 3d 555, 567 (S.D.N.Y. 2016) (internal quotations omitted) (citing *Ault v. J.M. Smucker Co.*, No. 13-cv-3409, 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014).

Specifically, to state a claim for breach of an express warranty under New York Law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach. *Goldemberg*, 8 F.Supp 3d at 482 (citing *Avola v. La.-Pac. Corp.*, No. 11-cv-4053, 2013 WL 4647535, at *6 (E.D.N.Y. Aug. 28, 2013). Further, "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty." *Ault*, 2014 WL 1998235, at *6.

Plaintiffs allege that (1) Defendant expressly warranted that their Product had properties that it did not, *viz*, containing more flavor from vanilla than cinnamon and chai spices, had real vanilla as opposed to artificial vanilla and was made with natural ingredients; (2) Defendant breached the express warranty on the label of, and/or in the advertising of the Product; (3) Defendant made such express warranty knowing the purpose for which its representations were to be used and advocating its use for such purpose; (4) Defendant's claims as to their Product did not conform to the express warranty and (5) Plaintiffs purchased the Product based upon these representations. SAC ¶¶ 147-155.

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty." *Goldemberg,* 8

F. Supp. 3d at 482 (quoting *Avola v. La.-Pac. Corp.*, No. 11-cv-4053, 2013 WL 4647535, at *6 (E.D.N.Y. Aug. 28, 2013). In *Goldemberg*, the court denied defendant's motion to dismiss breach of express warranty claims because their labels and marketing materials advertised their products as "Active Naturals" when they contained mostly synthetic ingredients. *Id*. at 482-83. Here, Defendant represents that its Products are predominantly flavored with real vanilla and deceptively advertises only the natural ingredients in the Product.

Finally, there is no privity requirement where a manufacturer made express representations to induce reliance by remote purchasers. *Arthur Glick Leasing, Inc. v. William J Petzold, Inc.*, 51 A.D. 4d 1114, 1116, 858 N.Y.S.2d 405 (3d Dep't 2008) (citing *Randy Knitwear, Inc. v. Am. Cyanamid Co.,* 11 N.Y.2d 5, 14, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962)

      B.    <u>Plaintiffs Properly Pled Negligent Representation and Fraud Claims</u>

          1.    *Plaintiffs Pled Claims with Particularity*

Defendant argues that Plaintiffs' fraud and negligent representation allegations fail to be pled with the required specificity pursuant to Fed. R. Civ. P. 9(b). Mem. at 19-20. To satisfy Rule 9(b), "the complaint must: (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec*., LLC, 797 F.3d 160, 171 (2d Cir. 2015). (internal quotation omitted). "Rule 9(b) requires only that Plaintiffs plead, with particularity, facts from which it is plausible to infer fraud; it does not require Plaintiffs to plead facts that make fraud more probable than other explanations." *Id*. at 175.

Plaintiffs have identified defendant as the speaker of the representations. SAC ¶ 157-158. Plaintiffs allege Defendant made numerous fraudulent statements indicating that (1) the Products contain more vanilla than honey; (2) the Products contain more vanilla than cinnamon; (3) the

vanilla flavor in the Products is only provided by vanilla beans because the "vanilla" statements are not qualified; (4) the Products do not contain artificial flavor such as vanillin to boost or spike a trace of vanilla and (5) the Products contain only natural ingredients.  SAC ¶ 157. Plaintiffs allege Defendant made the misleading representations on the front label of their Products. SAC ¶ 1-4.

Finally, Plaintiffs explain why the statements are fraudulent – because "Plaintiffs and class members desired to purchase, consume and use products or services which were as described and marketed by defendant and expected by reasonable consumers, given the product type." SAC ¶ 133. The allegations in the SAC thus meet the "primary purpose of Rule 9(b)" which "is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990).

### 2.   *Plaintiffs Properly Pled Privity Relationship Between the Parties*

In New York, "It is well settled that a claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information. *Mandarin v. Wildenstein*, 16 N.Y.3d 181, 173 (2011) (citing *J.A.O.Acquisition Corp. v. Stavitsky*, 8 NY3d 144, 148 (2007) (internal quotations omitted).

Defendant claims Plaintiffs cannot plead negligent misrepresentation because there existed no special relationship. These assertions disregard facts asserted in the complaint as well as established law in New York State.

A special relationship sufficient to establish a claim of negligent representation existed between Plaintiffs and Defendant. A relationship is considered to approach that of privity if: "(1) the defendant makes a statement with the awareness that the statement was to be used for a particular purpose; (2) a known party or parties rely on this statement in furtherance of that

purpose; and (3) there is some conduct by the defendant linking it to the party or parties and evincing [the] defendant's understanding of their reliance." *Greene v. Gerber Products Co.*, 262 F. Supp 3d 38, 75 (E.D.N.Y. 2017) (citing *Aetna Cas. And Sur. V. Aniero Concrete Co., Inc.*, 404 F.3d 566, 584 (2d Cir. 2005)).

As to negligent misrepresentation, "because casual statements and contacts are prevalent in business, liability in the commercial context is imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Greene* F.Supp 3d at 75 (internal quotation marks omitted) (citing *Eternity Glob. Master Fund. Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004).

Where a plaintiff fails to allege the existence of a special relationship, negligent misrepresentation is still properly pled where the plaintiff "emphatically" alleges (1) the person making the representation held or appeared to hold unique or special expertise and (2) the speaker was aware of the use to which the information would be put and supplied it for that purpose. *Id*. at 75 (citing *Eternity Glob.*, 375 F.3d at 188).

Plaintiffs adequately allege that Defendant held a unique or special expertise. SAC ¶ 151. Second, it defies logic that Defendant was not aware that consumers would rely upon the representations put on the front label of its chai products.

C.    Plaintiffs' Claims of Unjust Enrichment Are Not Duplicative

Defendant argues that the Court should dismiss Plaintiffs' unjust enrichment claim because it is duplicative. Mem. at 21-22. However, "[u]nder Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Vill., Inc.,* 42 F.3d 89, 95 (2d Cir.1994).

To the extent that this Court finds that Plaintiffs do not state claims pursuant to the GBL, fraud, negligent representation or breach of express warranty, the Court may hold that Plaintiffs' unjust enrichment claim is viable. *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 316-17 (N.D.N.Y. 2019). ("Plaintiff's claim for unjust enrichment arises outside of the scope of the Limited Warranty and is consequently not barred.").

Thus, because questions of fact remain as to all of Plaintiffs' claims, dismissal of Plaintiffs' unjust enrichment claim at this stage is premature. *Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 261 (E.D.N.Y. 2014) (declining to dismiss unjust enrichment claim as duplicative at motion to dismiss stage); *Burton v. Iyogi, Inc.*, No. 13-cv-6926, 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015) (denying motion to dismiss New York unjust enrichment claim and stating that "it is well-settled that parties may plead in the alternative"); *Cohn v. Lionel Corp.,* 289 N.Y.S.2d 404, 408 (1968) ("Undeniably, a plaintiff is entitled to advance inconsistent theories in alleging a right to recovery.").

## VI.   Plaintiffs Have Standing to Seek Injunctive Relief

Plaintiffs have standing to pursue injunctive relief because Plaintiffs' inability to rely on the Products' labels in the future, which causes them to avoid purchasing the Products even though they would like to if they could trust the labels, constitutes an imminent threat of future harm sufficient to satisfy Article III's injury in fact requirement. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181–85 (2000).

Here Plaintiffs contend that they would not have bought the Products or would have paid less for them. SAC ¶ 105. This gives rise to the supposition that Plaintiffs cannot rely on Defendant's labels to convey accurate and truthful information in the future.

In *Jackson-Mau v. Walgreen Co.*, 18-cv-04868, 2019 WL 5653757 (E.D.N.Y. Oct. 31, 2019), the court found that the plaintiff could seek injunctive relief because her complaint stated

23

she would purchase the product "again if she could be sure that the bottle actually contains what it is supposed to contain." *Jackson-Mau*, 2019 WL 5653757, at *3; *see also Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. at 397 (S.D.N.Y. 2016) (holding that the fact that "Plaintiff would continue to purchase the Products in the future if the misleading labeling is corrected is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm").

Similarly, in *Davidson v. Kimberly-Clark Corp.*, the United States Court of Appeals for the Ninth Circuit held as follows:

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) (footnote omitted) (citation omitted).

Furthermore, many courts have concluded that the inability to rely on the labels in the future, as alleged in the SAC, constitutes a threat of harm and that to hold otherwise would eviscerate the New York consumer protection statute. *See, e.g.*, *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("Federal courts 'have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer,' because to 'hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief.'" (quoting *Ackerman* at *2–3, *14–15, *15 n.23 (E.D.N.Y. July 18, 2013)).

For the above reasons, Plaintiffs have standing to seek injunctive relief.

## Conclusion

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety or in the alternative, grant Plaintiffs leave to amend or dismiss without prejudice.

Date:   June 12, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Tel: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

1:19-cv-10686-KPF
United States District Court
Southern District of New York

Ryan Cosgrove and Amanda Crout,

individually and on behalf of all others similarly situated,

                          Plaintiffs,

            -against-

Oregon Chai, Inc.,

                          Defendant

Plaintiffs' Memorandum of Law in Opposition
to Defendant's Motion to Dismiss the Second Amended Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Date:   June 12, 2020

                                        /s/Spencer Sheehan
                                        Spencer Sheehan

**Certificate of Service**

I certify that on June 12, 2020, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiffs' Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☐ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan